**In re SUPPORT OF Christine SELIGMAN.**

**Curt SELIGMAN, Appellant–Respondent Below,**

**v.**

**Dolores DEAN, Appellee–Petitioner Below.**

**No. 64A03–8805–CV–145.**

Court of Appeals of Indiana, Third District.

Aug. 30, 1989.

Ronald P. Nelson, Valparaiso, for appellant-respondent.

Herbert K. Douglas, Brian J. Hurley, Douglas, Douglas & Douglas, Valparaiso, for appellee-petitioner.

GARRARD, Presiding Judge.

Curt Seligman (Seligman) appeals an order of the Porter Superior Court awarding medical expenses and attorney's fees to Delores Dean (Dean), guardian of Seligman's daughter, Christine (Christine). Seligman asserts that the trial court committed three errors, but because we reverse on jurisdictional grounds, we will discuss only that threshold question.

## FACTS AND PROCEDURAL HISTORY

In a separate matter entitled *In re the Matter of the Guardianship of Christine M. Seligman,* cause No. 85–PSG–94, Dean was appointed guardian over the estate and person of Christine. The estate consists of an investment portfolio periodically funded by Seligman throughout Christine's childhood. It appears that following a breakdown in this father-daughter relationship Dean traveled to Florida to take custody of her niece, Christine. Christine's mother is deceased. With Seligman's written consent and waiver of notice, the guardianships were established just four days after Christine left Florida. Nevertheless, following receipt of Seligman's October 13, 1985 letter to the court objecting to such order, the court set a hearing for the matter. Seligman did not appear. However, on October 22, 1985 Seligman did write Dean to authorize her to attend to any of Christine's medical needs. In that letter he also informed Dean of Christine's medical insurance coverage. Thereafter, without notice to Dean, Seligman cancelled that insurance

and, as fate would have it, Christine soon incurred significant medical expenses.

On April 13, 1987 Dean, after expending her own funds in payment of Christine's medical bills, petitioned the Porter Superior Court for a support order requiring Seligman, now residing in Arizona, to pay, among other things, those medical expenses. Seligman retained counsel who filed an appearance and soon thereafter a motion to dismiss for lack of personal jurisdiction. The motion was denied. Ultimately, the court awarded Dean a portion of the medical expenses as well as her attorney's fees. Seligman appealed and, while we reject his assertions that the guardian Dean stands *in loco parentis* or that the ward's estate should be utilized to cover these expenses,[1] we agree that Indiana has no personal jurisdiction over him. That being the case, we must reverse the trial court's support order and award of attorney's fees.

## ISSUE

Our issue can be thus stated as follows: Whether or not an Indiana court which has established a guardianship over the estate and person of a minor domiciled in Indiana can subsequently assert personal jurisdiction over the non-resident father for purposes of entering a support order as to that minor.

## DISCUSSION AND DECISION

■ We commence with a short analysis concerning the impact of the guardianships. Dean is guardian in two separate capacities. As guardian of the estate she must manage the investment portfolio for Christine's benefit. IC 29–1–18–28(b) (repealed effective 7/1/89). As guardian over Christine's person, Dean has the obligation to see to her custody and education. IC 29–1–18–28(a) (repealed effective 7/1/89). Both Christine and the control of the fund have been within the borders of this state, for all practical purposes, since October of

---

1. As noted throughout this opinion the Legislature has repealed the guardianship statutes discussed herein. Effective July 1, 1989, Article 3 of Title 29 entitled "Guardianships, Conservator-

ships, and Other Protective Proceedings" will control these matters and may significantly alter the obligations of parties situated similarly to those before us. *See* IC 29–3–8–1(a).

1985. Conversely, Seligman had never been in Indiana prior to the denial of his unsuccessful motion to dismiss. His subsequent appearance here does not effect a waiver of his claim. *In re Marriage of Rinderknecht* (1977), 174 Ind.App. 382, 394, n. 11, 367 N.E.2d 1128, 1136; *State v. Omega Painting, Inc.* (1984), Ind.App., 463 N.E.2d 287, *rehearing denied* 464 N.E.2d 940.

The establishment of the guardianship over Christine's estate does not rest upon an Indiana court's exercise of personal jurisdiction over her out-of-state father. Christine's Indiana domicile and ownership of (personal) property here are legitimate bases for the exercise of personal jurisdiction to create a guardianship over an estate consisting of such personal property. IC 29–1–18–1 *et seq.* 39 Am.Jur.2d *Guardianship and Ward* § 45 (1968).

The guardianship over Christine's person must be instituted in compliance with the Uniform Child Custody Jurisdiction Act (UCCJA). 1 Clark, *The Law of Domestic Relations in the United States* 557 (2nd ed. 1988). This linkage to custody law is nothing more than a product of the realization that the duties of a guardian over the person and one with custody over a child are synonymous. *Id.* Indiana has adopted the UCCJA. IC 31–1–11.6–1 *et seq.*

The UCCJA by its name indicates that its concern is with jurisdiction. To be more precise, analysis under the UCCJA is to determine whether or not the court should exercise particular (subject matter) jurisdiction. *Board of Trustees of Town of New Haven v. City of Fort Wayne* (1978), 268 Ind. 415, 375 N.E.2d 1112; *Campbell v. Campbell* (1979), 180 Ind.App. 351, 388 N.E.2d 607. While our issue is whether or not the court had personal jurisdiction over Seligman, the scope of the UCCJA is, as discussed below, still significant.

A common basis for exercising *in personam* jurisdiction is domicile within Indiana. Christine and Dean have made Indiana their home. Seligman has not. Nevertheless, as this court recently held, custody proceedings are adjudications of status and as such are an exception to the minimum contacts requirements normally associated with discussions of personal jurisdiction. *In re Marriage of Hudson* (1982), Ind.App., 434 N.E.2d 107, *cert. denied* , 459 U.S. 1202, 103 S.Ct. 1187, 75 L.Ed.2d 433.[2] *Cf. Developments in the Law—The Constitution and the Family,* 93 Harv.L.Rev. 1156, 1246. Therefore, we conclude that the guardianship over Christine's person could be and was instituted without the need for, or reality of, an Indiana court's exercise of personal jurisdiction over her out-of-state father.

█ It follows then that, before an Indiana court may enter a support decree worthy of full faith and credit in Arizona, Seligman's domicile, he must have established minimum contacts with this forum. However, guardianship over Christine does not automatically establish minimum contacts between Seligman and this jurisdiction. In fact, the definition of "custody determination" in the UCCJA specifically provides that it "means a court decision and court orders and instructions providing for the custody of a child ... it *does not include a decision relating to child support or any other monetary obligation of any person.*" IC 31–1–11.6–2(2), (emphasis added).

Certainly the UCCJA is not a substantive provision of family law, but its approach to this matter is instructive. Custody and support are separate matters. As to the support issue as it relates to Seligman, we need a basis for exercising the long-arm jurisdiction found in the Indiana Rules of Procedure, Trial Rule 4.4(A). We find none of the provisions therein applicable to the facts before us and, consequently, decline the invitation to manipulate the various phrases of minimum contacts jurisprudence[3] to find a basis for judicially mandat-

---

**2.** *See Shaffer v. Heitner* (1977), 433 U.S. 186, 208, n. 30, 97 S.Ct. 2569, 2582, 53 L.Ed.2d 683, 700.

**3.** As Dean Harvey has noted, this area of the law "tends to develop into metaphorical jurisprudence, which after time can have very harmful results." 1 W. Harvey, *Indiana Practice* 173 (2nd ed. 1987).

ing that this father observe his moral obligation to support his daughter.

If in Indiana the obligations to provide support to a minor subject to a guardianship of the person were a direct result of the establishment of a consensual guardianship, Seligman would be within our reach. However, that is not the law in Indiana as it now stands. Dean, as guardian over the person, is not required to expend her own funds for Christine's benefit, IC 29–1–18–28 (repealed effective 7/1/89), but it does not follow that an Indiana court has the power to assess those expenses to an out-of-state father. Similarly, Christine, at the time in issue, was a ward under eighteen years of age and had a parent or, as Seligman argues, Dean standing *in loco parentis* who could support her. Under the probate code regarding guardianships over estates, the presence of these sources of support mean that neither the income nor the principal of the ward's estate is to be expended absent court order. IC 29–1–18–33 (repealed effective 7/1/89). Parents and persons standing *in loco parentis* could be found liable for support, but, once again, *in personam* jurisdiction over those persons is a prerequisite. We have no personal jurisdiction over Seligman. Therefore the trial court was without jurisdiction to enter the orders against him.[4]

The judgment is therefore reversed with instructions to dismiss for lack of jurisdiction.

Reversed.

HOFFMAN and MILLER, JJ., concur.

---

4. That is not to say, of course, that an appropriate order may not be entered in Arizona or any other state where personal jurisdiction may be properly acquired.